TEXAS & PACIFIC RAILWAY COMPANY v. A. E. McCOY.

Delivered December 31, 1897.

**1. Railroad—Accident to Brakeman—Charge of Court.**

In an action against a railroad company to recover for personal injuries sustained by a brakeman while coupling an engine to a train of standing cars, by means of the pilot bar, which the plaintiff upheld for that purpose upon his knee, which was crushed directly after the coupling was made, when one of the wheels of the car went into a low joint, a charge to the jury that, if the plaintiff, in placing the bar upon his knee and keeping it there, was negligent, and if but for such negligence he would not have been injured, he can not recover, is not objectionable as tending to confuse or mislead the jury.

**2. Same—Same—Contributory Negligence Vel Non.**

A brakeman who, to couple an engine to a standing car, placed the pilot bar upon his knee, which, after the coupling was made, and before the car had run three feet, was crushed by reason of one of the car wheels sinking at a low joint, is not guilty of such contributory negligence as will bar a recovery.

**3. Same—Same—Knowledge of Defect in Track.**

That the ground on which a side track was laid was known by the brakeman to be wet and soft, and that low joints were liable to be caused thereby, will not charge him with actual knowledge of the existence of such defect whereby he was injured while making the coupling.

APPEAL from Harrison. Tried below before Hon. W. J. GRAHAM.

*F. H. Prendergast,* for appellant.

*T. P. Young,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed by appellee on the 4th day of February, 1891, to recover damages from appellant for personal injuries sustained by him on the 13th day of October, 1890, while engaged as a brakeman in the employment of appellant, in coupling the head end of appellant's engine to a freight car. Appellee recovered a judgment in February, 1892, which was reversed by the Galveston Court of Civil Appeals. 3 Texas Civ. App., 276. Another judgment, rendered on August 30, 1893, was reversed by the Dallas Court of Civil Appeals. 31 S. W. Rep., 304. He recovered again, August 22, 1895, and this judgment was affirmed by the Dallas Court of Civil Appeals, but reversed and the cause remanded by the Supreme Court. 38 S. W. Rep., 36. The last judgment was recovered by appellee on February 18, 1897, and is for $1500.

We have carefully considered the statement of facts, and find the facts, so far as necessary to the disposal of this appeal, carefully and fully stated in appellee's brief, as follows:

A. E. McCoy, the appellee, was in the employ of appellant railway company as a brakeman. On or about October 13, 1890, while in the discharge of his duty at Buchanan Station, on said road, the engine had to go on a passing track to get out some cars, and it was necessary to couple the head end of the engine to the cars on the passing track. When the engine came to within about forty feet of the standing cars, McCoy got on the pilot or cowcatcher of the engine, and as there was no step on the pilot to stand on, he had to place one foot in between the bars of the pilot and place the other foot on the top or ridge of the pilot, and when within about eight feet of the cars he raised the pilot bar to make the coupling. The bar was very heavy, and he had to place it on his knee and hold it up while approaching the cars. He placed the pilot or coupling rod to the drawhead of the standing car, and the engine pushed it a few feet (three feet), when one wheel of the car went into a low joint, and this caused the end of the car to go down and press the coupling rod down on McCoy's knee, mashing and bruising his knee and leg. The bar was so heavy that he could not make the coupling without placing it on his knee, being much heavier than such bars usually are. He was not aware of the low joint before he was injured, but knew that the sidetrack was kept continually wet by some springs, and that such a condition was productive of low joints. The appellant was negligent in allowing its sidetracks to become dangerous and remain so. The appellee received a serious, painful, and permanent injury, and he was not guilty of contributory negligence. He was damaged by the injury in the amount of the verdict.

The assignments of error complain of the charge of the court, and of the refusal of the court to give special charges asked by appellant, all of which we overrule, concluding, as we do, from a careful consideration of the charges given and refused, that no substantial error was committed against the appellant.

The second paragraph of the court's charge is as follows: "If you find that plaintiff was negligent, and that but for his negligence he would not have been injured, then he can not recover."

The eighth paragraph is as follows: "The plaintiff was required to use ordinary care in making the coupling, and a failure to use such care would be negligence, which would prevent a recovery by him if the injury was caused by such negligence."

The tenth paragraph is as follows: "If you believe that plaintiff, in placing the bar upon his knee and keeping it there after he had made the coupling, was negligent, and that but for such negligence (if you find it was) he would not have been injured, then plaintiff can not recover, and if you so believe, you will find for defendant."

These paragraphs of the charge are objected to by appellant as coming in conflict with the decision of our Supreme Court in this case. Railway v. McCoy, 38 S. W. Rep., 36. But we are of opinion that such is not the case. The charge there condemned was, in substance, that if the jury believed that plaintiff was guilty of negligence "in placing the bar on his knee and allowing it to remain there after he made the coupling, and that by so doing he contributed to his injury to the extent that, but for his so doing, he would not have been injured, then he can not recover. On the other hand, if he was negligent in this respect, but you should believe that it did not contribute to his injury to the extent above mentioned, then he would not be precluded from recovering, if you should believe that he is otherwise entitled to do so."

Chief Justice Gaines, in commenting upon this charge, says: "The charge in question presents the issue as to whether or not the defendant's act contributed to the injury very pointedly, by instructing them, not that, if plaintiff was negligent, and his negligence contributed to the accident, to find for the defendant, but also that, if he was negligent, and his negligence did not so contribute, to find for him, provided they found that he was otherwise entitled to recover. The instruction was well calculated to confuse and mislead the jury. Its probable effect was to induce them to believe that the word 'contribute' had some technical sense different from its ordinary signification."

For this error the judgment was reversed. In the charge under consideration, however, no such error occurs. The jury are told that, if they believe two things, the plaintiff can not recover; that is, that placing the bar on his knee and keeping it there after the coupling was made was negligence, and that such negligence caused the injury. The Supreme Court in this case has said judicially that "if the plaintiff had not placed the bar upon his knee, in the nature of things his knee could not have been injured by the downward pressure of the bar resulting from the low joint." This proposition is so clearly correct that a 10-year-old school boy could see and understand it, and we must presume that jurymen selected under the laws of this State and duly accepted by both parties had intelligence enough to see it and understand it. Therefore it is manifest that the jury

would consider only the one question—whether the acts named constituted negligence. That the injury would not have occurred without them was too self-evident to require or even admit of consideration.

Courts must give jurymen credit for some intelligence, especially where the law requires that they must know how to read and write to be competent jurymen in any case. Suppose, in a proper case, the charge is: "If you believe from the evidence that the plaintiff held in his hand a bar of red hot iron for one minute, and that such act was negligence, and that without such negligence he would not have been burned in the hand as he was." Would any court in christendom hold that the latter part of this charge tended to mislead or confuse the jury, and reverse a judgment thereon otherwise without error? We think not.

The fifteenth and sixteenth assignments complain that the court erred in not granting a new trial, because (1) "the evidence showed that plaintiff used the side track for couplings; that he knew it was wet and soft, and the necessary effect of water being on the track would cause low joints. Therefore, by exercising ordinary care, plaintiff would have known that low joints existed on the track;" and (2) "the evidence showed that plaintiff was guilty of negligence in placing the bar on his knee to make the coupling and allowing his knee to remain under the bar until the car was pushed three feet."

These assignments we also overrule, because the evidence showed that the coupling could not have been made in any other way, and the jury were warranted in finding no negligence in appellee in allowing the bar to remain on his knee until the car had run *three feet*. He could hardly have gotten his knee out from under the bar while the car moved three feet, if it was running at much speed.

The fact that appellee knew that the side track was wet and soft, and that such a condition was productive of low joints, was not conclusive evidence that he knew of this low joint. He testifies that he did not know of any low joint on this track. He was not required to inspect the track. It was the duty of the master to use ordinary care to furnish a reasonably safe track for his use, and he had a right to assume that this duty had been performed. If he *knew* of the defect in the track, and continued to use it without a promise on the part of the master to repair it, he assumed the risk of any injury which that defect might inflict upon him. But having knowledge of the existence of a condition which might and usually does produce certain defects, is not tantamount in such cases to having knowledge of the specific defect. A servant operating a railroad train is encompassed by a thousand dangers to his life and limbs, and has but little time to sit down and calmly calculate the chances of one condition of the roadbed producing another condition which might make his service more perilous. The law protects him in the earnest, thoughtful, conscientious discharge of his duty as given him to do, against the dangers of the track which he knows not of, and requires the master with diligent hand and watchful eye to use ordinary

care to furnish a track reasonably safe for his use. The servant can not skillfully, thoughtfully, and carefully perform his train service, if he must continually watch the track for defects.

The judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.